# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

        Plaintiff,

    v.                                        Case No. 05-CR-88

ISRAEL SAUL MORENO,

        Defendant.

## ORDER DENYING MOTION TO DISMISS

On March 22, 2005, the grand jury charged defendant Israel Saul Moreno with three separate crimes arising out of a shooting incident that occurred on the Menominee Indian Reservation on February 24, 2005. A superseding indictment filed on May 24, 2005, added a fourth charge. Counts 1 and 2 of the superseding indictment allege violations of the criminal code of Wisconsin assimilated into federal law under the Assimilative Crimes Act (ACA), 18 U.S.C. § 13. Count 1 charges Moreno with endangering safety by use of a dangerous weapon by discharging a firearm from a vehicle contrary to Wis. Stat. § 941.20(3). Count 2 charges him with second degree recklessly endangering safety in violation of Wis. Stat. § 941.30(2). In Count 3, Moreno is charged with using and discharging a firearm during and in relation to a crime of violence contrary to 18 U.S.C. § 924(c). Count 1 and/or Count 2 serve as the predicate crime or crimes of violence upon which Count 3 is based. Finally, Count 4 charges the crime of felon in possession of a firearm contrary to 18 U.S.C. § 922(g)(1).

Moreno previously moved to dismiss the § 924(c) violation alleged in Count 3 on the ground that § 924(c) did not create a separate and substantive offense but was simply a penalty enhancer that, when applicable, increased the potential punishment for an underlying offense. Moreno claimed that § 924(c) could not be used to increase the penalty for state crimes charged under the ACA because 18 U.S.C. § 13 expressly limits the punishment for state law violations to that which would be authorized under an analogous state law. Because application of § 924(c) would increase the potential penalty above the state maximum, Moreno argued it must be dismissed.

On May 26, 2005, I adopted Magistrate Judge Aaron E. Goodstein's recommendation and analysis, concluded that § 924(c) created an independent substantive offense, and denied Moreno's motion to dismiss Count 3. Moreno thereafter sought and was granted new counsel, and now moves for dismissal of Counts 1 and 2 of the superseding indictment on the ground that the state crimes charged in those counts cannot be properly charged under the ACA. He also renews his motion to dismiss Count 3 since it cannot stand if both of the predicate offenses fall. The motion is fully briefed and ready for decision. For the reasons that follow, Moreno's motion to dismiss will be denied.

Moreno, a non-Indian, is alleged to have discharged a firearm in the direction of Norris G. House and Albert P. Waupoose, both enrolled members of the Menominee Tribe, while House and Waupoose were standing on the front porch of the War Bonnet Bar, which is located on the Menominee Indian Reservation. According to the government, Moreno fired at House and Waupoose as he and his friends were leaving the bar after a minor altercation with Waupoose. Moreno allegedly fired one shot from the front passenger seat of a blue Dodge Neon that at the time was parked in the bar's parking lot. Moreno and his friends fled the scene immediately after the

2

shot was fired, and neither House nor Waupoose were struck by the bullet. At the time of the incident, Moreno had a prior felony conviction.

The federal Assimilative Crimes Act (ACA or Act) assimilates into federal law, and thereby makes applicable on federal enclaves such as the Menominee Indian Reservation, certain criminal laws of the state in which the enclave is located. The ACA states in part:

> Whoever within or upon any [federal enclave] is guilty of any act or omission which, although not made punishable by any enactment of Congress, would be punishable if committed or omitted within the jurisdiction of the State . . . in which such place is situated, . . . shall be guilty of a like offense and subject to like punishment.

18 U.S.C. § 13(a).

"The ACA's basic purpose is one of borrowing state law to fill gaps in the federal criminal law that applies on federal enclaves." *Lewis v. United States*, 523 U.S. 155, 160 (1998). But the ACA is not intended to make federal enclaves subject to the entirety of the criminal law of the state in which the enclave is located. It thus makes applicable only those state criminal laws that make punishable acts or omissions that have not been made punishable "by any enactment of Congress." 18 U.S.C. § 13(a). The ACA may not be used to transform a state criminal charge into a federal offense where the same conduct is already subject to prosecution under federal law. *United States v. Chaussee*, 536 F.2d 637, 644-45 (7th Cir. 1976).

As both parties recognize, *Lewis* is the leading case on the meaning and application of the ACA. In *Lewis*, the defendant and her husband were charged with beating and killing the husband's 4-year-old daughter while all three lived on a federal army base in Louisiana. Notwithstanding the fact that the acts alleged were punishable as second-degree murder under federal law, see 18 U.S.C. § 1111(a), the government charged the defendant with first-degree murder under a Louisiana statute

3

which defined first-degree murder to include the "killing of a human being . . . [w]hen the offender has the specific intent to kill or inflict great bodily harm upon a victim under the age of twelve . . . ." La. Rev. Stat. Ann. § 14:30(a)(5) (West 1986 and Supp. 1997). Upon conviction, the District Court sentenced the defendant to life in prison. On appeal, the Fifth Circuit held that the Louisiana crime was not assimilated because essentially the same conduct was punishable under federal law. A majority of the Supreme Court agreed.

In *Lewis* the Court rejected a literal interpretation of the "any enactment" language of the ACA. A literal interpretation, the Court explained, would prevent the application of state criminal law even in cases where the applicable federal enactment was woefully inadequate. By way of example, the Court noted that the federal assault statute, 18 U.S.C. § 113, was a federal enactment that made punishable the same acts that led to the child's death in the very case before it. To construe the ACA in such a way that the possibility of charging a defendant with assault under §113 precluded assimilation of a state murder statute, if no federal murder statute existed, "would dramatically separate the statute from its intended purpose." 523 U.S. at 160. "[A] literal interpretation of the words "any enactment" would leave federal criminal enclave law subject to gaps of the very kind the Act was designed to fill." *Id.* at 161. Under such an interpretation, the ACA " would be unable to assimilate even a highly specific state law aimed directly at a serious, narrowly defined evil, if the language of any federal statute, however broad and however clearly aimed at a different kind of harm, were to cover the defendant's act." *Id.*

On the other hand, *Lewis* also rejected a construction of the ACA that would allow assimilation of any state law crime that did not contain the same precise elements as the federal enactment. Such an interpretation, the Court held, "would have the ACA assimilate state law even

4

where there is no gap to fill." *Id.* at 163. To hold that state law crimes were assimilated into federal law whenever there was no federal enactment making the same precise act or omission punishable could not only lead to the confusion of having over 50 different versions of federal enclave-related criminal law, but it would allow states to frustrate carefully considered federal policy choices in the area of criminal law. *Id.* at 163-64.

Rejecting both a literal interpretation of the ACA and the narrow "precise acts" test advanced by the government, *Lewis* set out a two-part inquiry to determine whether a state crime could be assimilated under the ACA. First, the court must ask whether the defendant's act or omission is made punishable by any enactment of Congress. *Id.* at 164. If the answer to that question is "no," no further inquiry is required and the ACA would presumably assimilate the state statute. If, however, the answer is "yes," then the court must go on to determine whether the applicable federal statute precludes application of the state law because it "would interfere with the achievement of a federal policy, . . . effectively rewrite an offense definition that Congress carefully considered, . . . or because federal statutes reveal an intent to occupy so much of a field as would exclude use of the particular state statute at issue . . . ." *Id.*

Recognizing that there was no clear "touchstone to provide an automatic general answer" to the second inquiry, the *Lewis* Court nevertheless attempted to provide some guidance. It noted that assimilation under the ACA will generally not be allowed "where both state and federal statutes seek to punish approximately the same wrongful behavior--where, for example, differences among elements of the crimes reflect jurisdictional, or other technical, considerations, or where differences amount only to those of name, definitional language, or punishment." *Id.* at 165. Assimilation of a state crime should also be rejected "where a set of federal enactments taken together make

5

criminal a single form of wrongful behavior while distinguishing (say, in terms of seriousness)

among what amount to different ways of committing the same basic crime." *Id.* On the other hand,

a substantial difference in the kind of wrongful behavior by the state and federal statutes will

ordinarily indicate a gap for the state statute to fill, unless Congress, through the comprehensiveness

of its legislation or its express language, indicates a contrary intent. *Id.* at 165-66. Ultimately, the

Court held, the question is one of legislative intent: "Does applicable federal law indicate an intent

to punish conduct such as the defendant's to the exclusion of the particular state statute at issue?"

*Id.* at 166.

Applying the test it had fashioned to the facts before it, the *Lewis* Court concluded that the

ACA did not assimilate the Louisiana statute under which the defendant had been convicted. In

answer to the first inquiry, the Court noted that the same conduct was punishable under the federal

murder statute as second-degree murder. And as to the second inquiry, the Court held that the

federal murder statute evinced an intent to punish conduct such as the defendant's to the exclusion

of the Louisiana statute. In reaching the conclusion regarding the legislative intent, the Court noted

that the federal murder statute was a detailed statute that covered all variants of murder, leaving no

gap for Louisiana's law to fill. *Id.* at 169. The legislative history of § 1111 reflected careful

consideration by Congress of its scope and application. *Id.* at 169-70. Likewise, the legislative

history of the ACA reflected Congress' view that the criminal prohibition of murder was not a gap

that needed to be filled by state law. *Id.* at 170. Finally, the Court noted that the federal statute was

intended to apply only on federal enclaves which would mean that if Louisiana law was assimilated,

those living in federal enclaves would be subject to "two sets of 'territorial' criminal laws in

addition to the general federal criminal laws that apply nationwide." *Id.* at 171. The Court also

6

rejected the government's argument that the Louisiana statute was a kind of "child protection" law that filled a gap in federal enclave-related law that Congress had left to the States. The fact that Congress had enacted various legislation related to child protection weakened such an argument. As a result, the Court concluded that federal law did not assimilate the child victim provision of Louisiana's first-degree murder statute.

Moreno argues that application of the *Lewis* test to the facts of this case leads to the same result. He contends that the federal assault statute, 18 U.S.C. § 113, like the federal murder statute, is a comprehensive statutory enactment that covers the same conduct he is alleged to have engaged in here. This fact, as well as the legislative history of §113 and the ACA, Moreno argues, demonstrates that Congress intended to occupy the field of federal enclave assaults with federal law. (Def.'s Br. In Supp. 7.) Accordingly, he argues, the state law crimes are not assimilated and Counts 1 and 2 of the superseding indictment must be dismissed. And since Counts 1 and 2 serve as the predicate offenses for Count 3, Moreno argues that Count must be dismissed as well.

It is true that federal law lists a variety of ways in which the crime of assault can be committed. But as the *Lewis* Court noted, "the federal assault prohibition is less comprehensive than the federal murder statute . . . ." 523 U.S. at 171-72. Section 113, which is entitled "Assaults within maritime and territorial jurisdiction" reads:

> (a) Whoever, within the special maritime and territorial jurisdiction of the United States, is guilty of an assault shall be punished as follows:
>
> (1) Assault with intent to commit murder, by imprisonment for not more than twenty years.
> (2) Assault with intent to commit any felony, except murder or a felony under chapter 109A, by a fine under this title or imprisonment for not more than ten years, or both.

7

(3) Assault with a dangerous weapon, with intent to do bodily harm, and without just cause or excuse, by a fine under this title or imprisonment for not more than ten years, or both.

(4) Assault by striking, beating, or wounding, by a fine under this title or imprisonment for not more than six months, or both.

(5) Simple assault, by a fine under this title or imprisonment for not more than six months, or both, or if the victim of the assault is an individual who has not attained the age of 16 years, by fine under this title or imprisonment for not more than 1 year, or both.

(6) Assault resulting in serious bodily injury, by a fine under this title or imprisonment for not more than ten years, or both.

(7) Assault resulting in substantial bodily injury to an individual who has not attained the age of 16 years, by fine under this title or imprisonment for not more than 5 years, or both.

18 U.S.C. § 113.

Moreno argues that various provisions of this statute cover the conduct in which he is alleged to have engaged. He notes that the crime of assault includes both an attempt to commit a battery and the act of putting another in reasonable apprehension of bodily harm. *See United States v. Bell*, 505 F.2d 539, 540-41 (7th Cir. 1974). Thus, discharging a firearm at another, as he is alleged to have done, constitutes assault with a dangerous weapon, a crime that is expressly covered by § 113(a)(3). The state law violations of discharging a firearm from a vehicle and second-degree recklessly endangering safety, Moreno argues, are the equivalent of the federal charge, and therefore may not be assimilated under the ACA. (Def.'s Br. In Supp. at 5-6.)

But the government has not charged Moreno with the state equivalent of assault with a dangerous weapon under 18 U.S.C. § 113(a)(3). Assault with a dangerous weapon under § 113(a)(3) requires proof that the defendant intended to do bodily harm. *See United States v. Perez*, 43 F.3d 1131, 1137 (7th Cir. 1994). The government candidly concedes that the evidence is not sufficient to prove that Moreno had such an intent. It notes that Moreno may have intended

8

only to scare or intimidate House and Waupoose. (Govt.'s Br. In Opp. at 12.) Thus, § 113(a)(3) does not make punishable the conduct in which Moreno is alleged to have engaged. The same is true of § 113(a)(1), which requires the specific intent to murder, and § 113(a)(2), which requires the intent to commit a felony. Subsection (4) of § 113(a) requires that the victim be struck, beat or wounded, and subsections (6) and (7) require that the victim suffer serious bodily injury or , if under age 16, substantial bodily injury. These provisions clearly do not apply.

The conduct alleged is covered, however, by § 113(a)(5), which makes simple assault punishable by a fine and imprisonment of not more than six months. The question presented then is: does the fact that firing a gun at another person from a car is punishable under federal law as a simple assault foreclose charging the more serious state law violations under the ACA? I conclude it does not.

Shooting a gun in the direction of a person, regardless of whether the shooter intends to, or actually does, inflict injury upon another is substantially different than simple assault. A firearm is a lethal weapon. The discharge of a firearm from a vehicle at or toward another person or building creates a far greater threat to the safety of the person at whom the shot is fired, as well as the general public, than a simple assault. The fact that the federal assault statute fails to specifically address this conduct is, in this court's view, not the result of a carefully reasoned policy decision by Congress, but one of the many gaps in federal criminal law that state law is called upon under the ACA to fill.

Several pre-*Lewis* cases address this issue. In *United States v. Robinson*, 376 F. Supp. 1024 (D. Hawaii 1974), a case relied upon by Moreno, the defendant was charged with assault with a dangerous weapon with intent to do bodily harm in violation of 18 U.S.C. § 113(c), the predecessor

9

to § 113(a)(3), and second-degree recklessly endangering safety in violation of § 714 of the Hawaii Penal Code, when he tried to strike and injure a person with his vehicle on a United States Army Reservation located in Hawaii. Concluding that Hawaii's crime of second-degree reckless endangerment is "the equivalent of the federal statute on 'assault with a dangerous weapon, with intent to do bodily harm' set out in 18 U.S.C. § 113(c)," 376 F. Supp. at 1026, the district court held that the state crime was not assimilated and granted the defendant's motion to dismiss. Likewise, in *United States v. Patmore*, 475 F.2d 752 (10th Cir. 1973), the court held that a defendant could not be charged with Kansas' crime of aggravated assault under the ACA for allegedly stabbing a fellow inmate at a federal penitentiary since the same conduct was punishable under 18 U.S.C. § 113(c). It appears, however, that in both *Robinson* and *Patmore* there was no dispute that the defendant intended to injure the victim. In *Robinson,* the defendant tried to run the victim down with his car, and in *Patmore*, the defendant actually did stab the other inmate. In both cases, the courts concluded the state violation that was charged was essentially identical to the federal charge of assault with a dangerous weapon with intent to cause bodily harm. Here, by contrast, the specific intent to cause bodily harm is missing.

In this respect, this case is closer to *United States v. Johnson*, 967 F.2d 1431 (10th Cir. 1992), also a pre-*Lewis* case, in which the court concluded that a federal defendant could be charged with violating New Mexico's aggravated assault statute under the ACA. In *Johnson*, the defendant was pulled over for reckless driving by a tribal officer on the Navajo Indian Reservation located in New Mexico. The defendant, who was intoxicated, pulled a gun on the tribal officer after he exited his car, threatened to kill the officer, and even pointed the gun at the officer's head and fired a shot, barely missing him. Despite these facts, the defendant claimed he was so intoxicated (his blood

10

alcohol content was in the range of .25 to .30 percent) he could not form the specific intent to do bodily harm. The district court refused the defendant's request to instruct the jury on simple assault under 18 U.S.C. § 113(e), now § 113(a)(5), and instead submitted an instruction on New Mexico's aggravated assault statute which did not require a specific intent to injure. See. N.M. Stat. Ann. § 30-3-2A (1978). The jury found the defendant guilty of violating the New Mexico statute, and he appealed, claiming that New Mexico law on aggravated assault was not assimilated because federal law prohibits the same conduct. The Tenth Circuit disagreed, however, and affirmed the conviction. In so ruling, the Court stated that "[t]he federal statute does not cover the act of an assault with a deadly weapon but without intent to commit bodily harm. In these circumstances, resort to the New Mexico statute is appropriate to fill a gap in the federal statute." 967 F.2d at 1436. Although *Lewis* cited *Johnson* as an example of a lower court decision that had adopted an overly narrow construction of the ACA's "any enactment" language, 523 U.S. at 162, I do not read *Lewis* as overruling *Johnson*'s basic holding. *Johnson* held that the federal assault statute does not preclude assimilation of a state law making it a crime to assault another with a dangerous weapon but without the intent to cause bodily harm. Nothing in *Lewis* renders this holding untenable.

More importantly, the state statutes upon which the charges in this case are based are not directed at assault in the traditional sense of the term. Assault is a crime against a specific individual. Battery, Wisconsin's counterpart to § 113, is found in Chapter 940 of the Wisconsin Statutes entitled "Crimes Against Life and Bodily Security." The crimes charged in Counts 1 and 2 of the superseding indictment, on the other hand, are found in Chapter 941 of the Wisconsin Statutes, entitled "Crimes Against Public Health And Safety." Count 1 charges a violation of Wis. Stat. § 941.20(3)(a) which makes punishable the discharge of a firearm from a vehicle on a highway

11

or in a public parking lot at or toward a person or building. The harm toward which the statute is directed is not just the risk to an individual person, but rather the risk to the public in general when persons fire guns from vehicles toward other persons or buildings. The same is true of Wis. Stat. § 941.30(2), which prohibits recklessly endangering the safety of another. The term "recklessly," as used in § 941.30, means "that the actor creates an unreasonable and substantial risk of death or great bodily harm to another human being and the actor is aware of that risk." Wis. Stat. § 939.24(1). Nothing in the language or structure of the federal law of assault suggests that § 113 was intended to preclude application of such laws in federal enclaves. I therefore conclude that Moreno's motion to dismiss Counts 1 and 2 should be denied. And because the motion to dismiss will be denied as to Counts 1 and 2, it follows that Count 3 also survives and the motion will be denied as to that Count as well.

**SO ORDERED.**

Dated this ___9th___ day of August, 2005.

                                              s/ William C. Griesbach
                                              William C. Griesbach
                                              United States District Judge